2010-02015
FILED
January 11, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002340183

**21 Pages**

Gregory C. Nuti, (SBN 151754)
E-Mail: gnuti@schnader.com
Kevin W. Coleman (SBN 168538)
E-Mail: kcoleman@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

John K. Gisleson (Pro Hac Vice)
E-Mail: jgisleson@schnader.com
Keith E. Whitson (Pro Hac Vice)
E-Mail: kwhitson@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, Pennsylvania 15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Attorneys for Plaintiff Bradley D. Sharp,
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No.: 09-29162 |
| SK Foods, LP, a California limited partnership, | Chapter 11 |
| Debtor. | |
| In re | Case No. 09-29161 |
| RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co., | Chapter 11 |
| Debtor | |

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

Bradley D. Sharp, Chapter 11 Trustee of SK Foods, L.P., a California limited partnership and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co.,

Plaintiffs,

vs.

Scott Salyer, in his individual capacity and as Trustee of the Scott Salyer Revocable Trust, the Scott Salyer Revocable Trust, and SKPM Corporation,

Defendants.

**ADVERSARY COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

A.P. No.

Bradley D. Sharp, the duly appointed and acting Chapter 11 Trustee (the "Trustee") in the cases of SK Foods, L.P., a California limited partnership, and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co., hereby files this Adversary Complaint, and in support thereof, avers as follows:

## INTRODUCTION

The Defendants, at all relevant times, owned and controlled Debtors as well as numerous other affiliated entities that do business with Debtors. Defendants breached their fiduciary duties of loyalty and care to Debtors by engaging in numerous acts designed to benefit themselves and other entities in which they have an interest, all to the detriment of Debtors and their creditors. Defendants not only transferred funds and assets belonging to Debtors to other entities, and used Debtors to benefit these other entities in numerous ways, but they also actively attempted to sabotage Debtors' operations. This adversary proceeding seeks to recover monetary damages from the Defendants for the harms suffered by these breaches.

## THE PARTIES

1.      Plaintiff Bradley D. Sharp is the duly appointed and acting Chapter 11 Trustee in the cases of SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM") (jointly, "the Debtors").

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

2.　　　SK Foods is a California limited partnership with a principal office at 1175 19th Avenue, Lemoore, California.  Its registered agent is Defendant Scott Salyer.

3.　　　RHM is a California corporation with a principal place of business at 1175 19th Avenue, Lemoore, California.  Its registered agent is Mark McCormick.

4.　　　Scott Salyer ("Salyer") is an individual residing in the State of California.

5.　　　The Trustee is informed and believes and thereon alleges that the Scott Salyer Revocable Trust ("SSR Trust") is a California trust whose trustee is Salyer and whose sole beneficiary is Salyer.

6.　　　The Trustee is informed and believes and thereon alleges that SKPM Corporation ("SKPM") is a California corporation with its principal place of business located at 21 Lower Ragsdale Drive, Monterey, California.  Its registered agent is Mark McCormick.

## JURISDICTION AND VENUE

7.　　　Involuntary petitions were filed with respect to these Debtors on or about May 5, 2009 ("Petition Date").  On or about May 7, 2009, Debtors SK Foods and RHM filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (the "Bankruptcy Code.").

8.　　　This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157, and Rule 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure.

9.　　　This is a core proceeding under 28 U.S.C. §§ 1408 and 1409.

10.　　　Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

11.　　　The SSR Trust is controlled by Salyer, who at all relevant times has been its Trustee and sole beneficiary.

12.　　　SKPM is owned 100% by the SSR Trust, and Salyer has been President of and controlled SKPM at all relevant times.

13.　　　SK Foods was formed on or about December 29, 1992 by SKPM (under a former name) as general partner and Salyer American, a California corporation, as limited partner.  On

Adversary Complaint

PHDATA 3265972_v1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1    or about December 29, 1995, Salyer American assigned all of its right, title and interest to Salyer

2    individually.

3        14.      Since December 29, 1995, Salyer has controlled directly or indirectly 100% of the

4    ownership interests of SK Foods.

5        15.      SK Foods currently is owned 45.55% directly by the SSR Trust, which is its

6    limited partner. The other 54.45% is owned by SKPM, which is the general partner.

7        16.      Salyer was the Chief Executive Officer of SK Foods at all relevant times.

8        17.      Salyer has been a Director of SK Foods at all relevant times.

9        18.      Scott Salyer has signed documents at various points in time representing himself

10    to hold numerous different positions with SK Foods, including Secretary, President, Director,

11    and Chief Executive Officer. In addition, Salyer executed various documents on behalf of SK

12    Foods in his capacity as President of SKPM, the general partner.

13        19.      Through his ownership and control of SK Foods' two partners (the SSR Trust and

14    SKPM) and in his capacity as Director, CEO, President and other positions with SK Foods,

15    Salyer has exercised ultimate and complete control over SK Foods at all relevant times.

16        20.      Salyer also exercised ultimate control over RHM at all relevant times.

17        21.      Salyer directly interacted with other officers and managers, and gave instructions

18    to them concerning operation and management of the Debtors. These officers and managers

19    followed Salyer's instructions.

20        22.      Salyer also owned and controlled many other entities that did business with

21    Debtors, including but not limited to Salyer Management Company, LLC, SKF Aviation, LLC,

22    SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III,

23    LLC, Blackstone Ranch Corp., Monterey Peninsula Farms, LLC, SK Foods, LLC, and others.

24        23.      Salyer used his positions and interests in Debtors to provide benefits to other

25    entities in which he had an interest to the disadvantage of Debtors and their creditors, as well as

26    to fund a lavish lifestyle for himself so that he would not have to spend those monies from his

27    personal funds.

28

PHDATA 3265972_v1

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

24.     The SSR Trust and SKPM, through Salyer, caused SK Foods to provide benefits to other entities in which they or Salyer had an interest to the disadvantage of SK Foods, RHM and their creditors.

25.     Defendants at all times failed to act in good faith and in the best interests of Debtors and their creditors.  Instead, Salyer consistently pursued his self-interest and disregarded the duty of loyalty he owed to Debtors.  He pursued and authorized transactions to the detriment of Debtors and their creditors, and to further his own personal interests or those of other entities he owned and controlled.

**Transfers of Debtors' Funds and Assets**

26.     The Defendants transferred or caused to be transferred money and other assets from SK Foods to these other entities in which they had an interest.

27.     Salyer directed the transfer of funds from the Debtors whenever one of the other entities in which Defendants had an interest needed money.  This pattern of transfers took place over many years and continued up through the Petition Date.

28.     On many occasions, funds or other assets were diverted from the Debtors to other parties in which Defendants had an interest without an adequate explanation of the purpose of the transaction.

29.     Some such transactions were made in order to capitalize entities in which Debtors had no interest but Defendants had an interest.

30.     As of June 30, 2007, transactions by SK Foods with certain of these other entities resulted in current related-party receivables of $18,714,000 and non-current related party receivables of $22,070,000.  As of June 30, 2008, transactions by SK Foods with certain of these entities resulted in current related-party receivables of $13,534,000 and non-current related party receivables of $22,406,000.

31.     As an example of such transfers, SK Foods paid $1.5 million to SSC Farming LLC, so that it could purchase title to certain real estate, and another $700,000 so that it could purchase title to another piece of real estate.  The land purchased by SSC Farming, LLC was land that Debtors needed for their operations so that they could discharge wastewater.  There was

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1  no legitimate business purpose for SK Foods to provide the funds for those purchases to SSC

2  Farming, LLC when it could have purchased the land itself for Debtors' use and thereby have

3  control over the land. SSC Farming, LLC had few, if any, assets at the time, and it was clear that

4  SSC Farming, LLC would not be able to repay funds advanced by SK Foods.

5         32.    As another example, in November 2005, SK Foods paid $3 million to SSC

6  Farming, LLC so that entity could pay down a line of credit with Wells Fargo held by SSC

7  Farming, LLC, SS Farms, LLC and Blackstone Ranch Corp., all entities in which Salyer and the

8  SSR Trust had an interest.

9         33.    As a result of these and other transfers, SSC Farming, LLC owed approximately

10  $12 million to SK Foods as of December 31, 2007.

11         34.    As another example, although SK Foods had entered into an Agreement with

12  Westlands Water District to purchase certain parcels of land that were within five miles of SK

13  Foods' facility, Defendants had SSC Farms I, LLC and SSC Farms II, LLC take title to the

14  property. SSC Farms I, LLC and SSC Farms II, LLC did not provide any consideration to SK

15  Foods for this purported assignment of the rights to purchase this land. There was no benefit to,

16  or legitimate business purpose associated with, SK Foods assigning its rights, which action in

17  fact was to its detriment. On information and belief, the assignment was not documented.

18         35.    As another example, in December 2006, Defendants caused SK Foods to transfer

19  $4 million so that RHM and SKF Aviation, LLC could make tax prepayments.

20         36.    As further examples, Defendants caused SK Foods to make payment on invoices

21  for liabilities incurred by other entities in which Defendants had an interest for costs spent on

22  tenant improvements at the headquarters locations in Monterey, and to provide funding to certain

23  other entities to repay intercompany liability of other related entities, with no benefit to the

24  Debtors.

25         37.    When Debtors' lenders demanded that transfers of assets to related entities cease,

26  Defendants caused Debtors to make payment of various types of "prepaid expenses" in order to

27  shift assets away from Debtors and to other entities in which they had an interest.

28

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

38.     For example, Defendants caused SK Foods to make a payment for prepaid expenses to SKF Aviation, LLC in December 2007 in the amount of $1.5 million allegedly for flights to be taken in 2008.  On information and belief, SK Foods has never been presented with any records or logs of flights to show whether and to what extent the prepaid expenses in fact were utilized, who flew on the aircraft, or the purpose of the flights.  Salyer used the aircraft repeatedly in 2008, including for his personal use.

39.     Defendants caused Debtors to make payments to SKF Aviation, LLC for transportation services that were unrelated to Debtors' business, but rather, were for Salyer's personal benefit.

40.     Defendants caused Debtors to pay $500,000 toward the cost of an aircraft purchased by SKF Aviation, LLC.

41.     SK Frozen Foods, LLC, an entity partly owned by the SSR Trust, was not capitalized by its putative owner SSR Trust, did not have any officers or employees and is a shell corporation.   SK Foods provided all the funds to capitalize SK Frozen Foods, LLC and provided that entity funds to lease premises ("Monterrey Fish Company facility") to engage in the business of flash freezing broccoli, cauliflower, and peppers.  Another Salyer entity that currently is in receivership (Salyer American Fresh Foods ("SAFF")) was to operate and fund SK Frozen Foods, LLC.  Like SK Frozen Foods, LLC, SAFF lacked the funds to purchase equipment necessary to flash freeze produce and to retrofit the facility.  As a result, Defendants caused SK Foods to purchase equipment for SK Frozen Foods, LLC, pay approximately $1 million to retrofit the facility, and pay to rent the facility.

42.     Despite SK Foods investing approximately $2 million, the SK Frozen Foods business was abandoned before operations began.  SK Foods was never repaid.

43.     Sometime in 2009, Defendants caused SK Foods to transfer assets to SK Frozen Foods, LLC for no consideration.  SK Frozen Foods, LLC then sold all of its assets in May or June 2009 to John Bryce, a former employee of SAFF.  On information and belief, Defendants or another company controlled by them retained the proceeds, and did not repay SK Foods.

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

### Defendants' Use of Debtors' Funds For Their Own Benefit

44.     Salyer used his ownership and/or management control of the Debtors and the Defendants to fund an extravagant lifestyle, charging lavish expenses totaling tens of thousands of dollars per month to the Debtors and various other entities (whose revenues and other funds came directly or indirectly from the Debtors).  It was not uncommon for Salyer's monthly expenses charged to the Debtors to exceed $100,000 per month.  In Salyer's world, personal expenses (such as wine and dinners costing thousands of dollars each) were regularly considered business expenses so that he could avoid paying the expenses out of his own pocket.  Salyer continued his excessive spending even after the Debtors experienced significant financial troubles and despite requests from Debtors' financial personnel that the expenditures be avoided or at a minimum reduced.  The vast majority of the expenses he incurred were paid by SK Foods, many of which did not have legitimate business purposes, were unreasonable, and excessive.

45.     Salyer regularly charged stays at hotels and resorts to SK Foods, including charges of tens of thousands of dollars for locations in Pebble Beach, Las Vegas and Paris.

46.     Salyer also charged various purchases for him or his daughters to SK Foods, including numerous charges of tens of thousands of dollars for purchases from Neiman Marcus, a $47,000 charge from a jewelry store, and a New York shopping spree in which he charged $62,000 for various clothing purchases.

47.     Salyer caused the Debtors to pay salaries to his daughters even though for the majority of time they did not perform any services.  The Debtors also made quarterly tax payments on behalf of Salyer's daughters for imputed income to their trusts.  He further caused the Debtors to pay for cars, cell phones, and flights for his daughters.

48.     Salyer caused the Debtors to pay for rental cars for his ex-wives.

49.     Salyer Management Company LLC was formed by Salyer to receive purported "management fees" for services provided by SK Foods' employees.  In reality, the purpose of Salyer Management Company was a conduit for money from operations of the single enterprise (SK Foods and its affiliates) to pay one of Scott Salyer's ex-wives consistent with the terms of a divorce settlement.  On information and belief, the payments were approximately $50,000 per

Adversary Complaint

PHDATA 3265972_v1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1    month and an additional $1 million payment annually.  Salyer Management Company did not

2    provide reasonably equivalent value for the monies it received; rather, any services were

3    provided by employees of SK Foods, and those funds rightfully belonged to SK Foods.

**Divestiture of The Foreign Entities**

5    50.    SK Foods sought to diversify its operations and access foreign markets by

6    expanding to New Zealand and Australia, whose growing seasons are different than the ones in

7    California where SK Foods' crops were located.  Several entities owned and controlled by

8    Defendants managed operations in New Zealand similar to those of SK Foods, other such entities

9    managed similar operations in Australia (collectively the "Foreign Entities").

10    51.    SK Foods paid the purchase price and associated expenses to acquire those

11    entities, and SK Foods initially owned (directly or indirectly) the Foreign Entities.

12    52.    SK Foods funded the Foreign Entities' operations through at least 2006.

13    53.    In or about December 2007, SK Foods owned the Foreign Entities as a result of

14    having expended the funds to purchase those entities.

15    54.    Defendants and/or others working at their direction caused the divestiture of the

16    Foreign Entities to other entities without consideration or benefit to SK Foods.  Further,

17    Defendants purported to "back date" the transfer to November 1, 2006.  On information and

18    belief, the transaction documents were executed well after November 2006.

19    55.    Given the assets owned and operated by the Foreign Entities and the purpose of

20    purchasing the Foreign Entities, the divestiture was not in the best interests of SK Foods and did

21    not serve a legitimate corporate purpose.

22    56.    At the time of the divestiture, the Foreign Entities owed SK Foods $18 million,

23    which was net of $10 million that SK Foods owed to the Foreign Entities.  (The Foreign Entities

24    thus owed a total of $28 million to SK Foods.)

25    57.    According to Consolidated Financial Statements for SK Foods issued for the eight

26    month period ending June 30, 2007 and dated January 15, 2008, SK Foods "sold the

27    Partnership's inter-company receivables to a revocable trust with common ownership with the

28    Partnership."

PHDATA 3265972_v1

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

58.     The revocable trust referenced above is the SSC&L 2007 Trust, which was a trust created by Salyer.  "SSC&L" is an acronym for Scott [Salyer], Stephanie [Salyer], Caroline [Salyer], and Louie.  "Louie" is Salyer's dog.

59.     On information and belief, SSC&L had no operations, revenues, or assets.

60.     There was no reasonable or legitimate business purpose for transferring the receivable owned by the Foreign Entities.

61.     On information and belief, SSC&L did not pay any money to SK Foods for the inter-company receivables, which had a value of at least $18,293,000.

### Wastewater Discharge Agreements and Their Purported Termination

62.     As set forth above, Defendants caused SK Foods to transfer its rights to purchase certain land to SSC Farms I, LLC and SSC Farms II, LLC.  Also as set forth above, Debtors provided funds ($1.5 million and $700,000 respectively) to SSC Farming, LLC to allow it to purchase several parcels of land.  In each of these cases, no consideration was provided to SK Foods for these transfers.

63.     The Defendants arranged for entities in which Defendants had an interest to take title to the land, and this land was critical to Debtors' operations.  In particular, Debtors had to discharge wastewater on this land as part of its processing operations.  Without having a location to which it could discharge its wastewater, Debtors could not run their processing operations.

64.     Defendants caused Debtors to enter into Wastewater Discharge Agreements with SSC Farming, LLC, SSC Farms I, LLC and SSC Farms II, LLC (hereinafter collectively "Wastewater Entities").  Pursuant to the Wastewater Discharge Agreements, Debtors were charged $400 per acre each year for the right to discharge wastewater on those lands.  This annual charge was equivalent to the purchase price for those properties.  In other words, after Debtors enabled the Wastewater Entities to purchase the land, without consideration, the Wastewater Entities charged Debtors on an annual basis the same amount it cost to purchase the land outright.

65.     Defendants unilaterally set the terms of the Wastewater Discharge Agreements, to the detriment of Debtors and their creditors.

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

66.     The Wastewater Discharge Agreements were not negotiated at arms-length and were merely an artifice to transfer funds from Debtors to the Wastewater Entities and to protect certain assets from Debtors' creditors.

67.     Defendants then caused Debtors to breach the terms of the Wastewater Discharge Agreements.  In particular, Defendants failed to cause Debtors to make payments as required.

68.     Further, while aware of this breach, Defendants, through their counsel, specifically instructed Debtors not to make payments of amounts due and owing under the Wastewater Discharge Agreements.

69.     After instructing Debtors not to make payments under these contracts, Defendants purported to terminate the Wastewater Discharge Agreements on behalf of the Wastewater Entities and based on the Debtors' failure to make payments, thereby depriving Debtors of locations to which they could discharge wastewater.

70.     Defendants took these actions with the specific intent of crippling Debtors' ability to operate, so that Defendants and the Wastewater Entities in which Defendants had an interest would have more leverage against the Debtors and Debtors' lenders and could extract concessions from those lenders that did not benefit Debtors, but rather, benefited themselves and other entities in which they had an interest.  Defendants took these actions to the direct detriment of the Debtors and their creditors.

71.     The termination of the Wastewater Discharge Agreements depressed the value of the Debtors' business, caused considerable litigation and other expenses to resolve the issues created thereby, and resulted in payments to the Wastewater Entities (which Defendants own and control) in excess of $1 million.  All these damages were avoidable had Defendants complied with their fiduciary duties.

### **Transfer Of The Drum Line**

72.     At the direction of Defendants or those acting under their direction and control, a valuable asset – "the Drum Line" – was transferred from SK Foods to another entityfor little or no consideration and in violation of injunctions issued by this Court.

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

73. SK Foods used fiber drums in connection with its transport and processing of tomatoes. SK Foods owned a commercial drum manufacturing line ("the Drum Line") that it used to produce its own drums. The drum line had a value of at least $350,000.

74. Defendants did not attempt to market the Drum Line to unrelated third parties in an effort to maximize the sales price even though the Debtors were in financial distress.

75. At or around the Petition Date, Defendants disassembled and moved the Drum Line from SK Foods to the premises of CSSS, LP, a related party controlled by Salyer.

76. Defendants caused SK Foods to execute a Purchase and Sale Agreement and a Promissory Note with CSSS, LP, by which SK Foods purported to sell the Drum Line to CSSS, LP and CSSS, LP purported to buy the Drum Line from SK Foods. CSSS, LP did not pay SK Foods anything for the Drum Line; instead CSSS, LP gave SK Foods a Promissory Note, in the amount of $350,000. No payment was required to be made by CSSS, LP to SK Foods under the Note until December 31, 2009, and the payment due then is only interest on the note, calculated at a fixed rate of 5% per annum. Thereafter, only interest payments are required to be made until the Promissory Note came due on June 1, 2013.

77. Salyer signed the Purchase and Sale Agreement as Chief Executive Officer of SKPM. Gerard Rose, a purported trustee for the two trusts that purportedly own CSSS, signed the Purchase and Sale Agreement on behalf of CSSS.

78. The Purchase and Sale Agreement did not represent an arms-length transaction, and the terms did not represent market rates and terms.

79. CSSS, LP did not have the resources to pay for the Drum Line at the time the Purchase and Sale Agreement was executed and did not have any reasonable or realistic prospect of being able to pay for the Drum Line.

80. The Purchase and Sale Agreement was not negotiated in good faith.

81. On information and belief, the Purchase and Sale Agreement was executed at or around the Petition Date and back-dated to December 1, 2008 in order to conceal the true date of execution and in the hope of escaping an avoidance action.

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

82. By the Petition Date, the sale of the Drum Line by SK Foods to CSSS, LP had not been reflected in the financial records of SK Foods.

83. On August 24, 2009, this Court entered a temporary restraining order to prevent shipment of the Drum Line out of California. The Court then entered a preliminary injunction on September 3, 2009 to enjoin shipment of the Drum Line to any location outside of California.

84. Despite the temporary restraining order and the injunction, Defendants shipped the Drum Line to New Zealand.

85. The shipping documents list an affiliate of Defendants, Monterey Peninsula Farms, LLC, as the shipping party, which is not a party to the Purchase and Sale Agreement. The majority owner of Monterey Peninsula Farms, LLC is SSC Farming, LLC whose majority owner is the SSR Trust, whose sole beneficiary is Salyer.

86. In litigation concerning the Drum Line, CSSS could not produce a witness who would admit to having authority to ship the Drum Line to New Zealand, who could identify the person who did have authority, and further claimed to have no employees and no ongoing operations. Only after discovery against other third parties was it discovered that Salyer authorized and directed the shipment of the Drum Line to New Zealand.

87. On information and belief, Salyer caused the shipment in violation of the Court Orders for the benefit of himself and other entities in which Defendants have an interest.

### Other Uses of Debtors to Benefit Other Entities

88. Defendants caused Debtors to enter into contracts solely for the benefit of other entities in which they had an interest, thereby causing harm to Debtors.

89. Defendants caused Debtors to enter into contracts for which Defendants, acting for the benefit of other entities in which they had an interest, unilaterally set the terms. These contracts were not negotiated at arms-length, and by causing Debtors to enter into such contracts, caused harm to Debtors.

90. For example, Defendants caused Debtors to make payment to Salyer or the SSR Trust to "rent" bins from Salyer and the SSR Trust at exorbitant prices and without any arms-

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1   length negotiations.  Upon information and belief, these rental charges were unilaterally set by

2   Salyer.

3       91.     Defendants from time to time retroactively reset prices charged to Debtors by

4   other entities in which they had an interest.  For instance, near the end of 2008, when SSC Farms

5   III, LLC and SS Farms, LLC were losing money, Salyer unilaterally caused those entities to bill

6   additional amounts to SK Foods for the same services.

7       92.     Defendants also caused Debtors to guarantee loans or leases by other entities in

8   which they had an interest.  For example, SK Foods guaranteed SKF Aviation, LLC's loan used

9   to purchase an aircraft, with no benefit to SK Foods.  As another example, SK Foods guaranteed

10  various leases on behalf of SS Farms, LLC.

11      93.     Defendants caused SK Foods to provide management and administrative services

12  to other entities in which they had an interest, with no consideration.  On some occasions, SK

13  Foods allocated certain amounts to other entities to account for some of these services, but those

14  allocations were not enforced or collected.

15      94.     Defendants caused SK Foods to pay for rent, equipment and other expenses that

16  benefitted other entities in which they had an interest, with no corresponding benefit to Debtors.

17  Such expenses included insurance, employee benefits, facility leases, equipment leases,

18  automobiles and other expenses.

19      95.     In many cases in which invoices were generated by another entity in which

20  Defendants had an interest, Defendants caused Debtors to overpay those invoices.  Based on

21  information known to date, more than $2,300,000 was transferred to related parties through

22  overpaid invoices.

23      96.     Defendants withdrew funds from Debtors without any legitimate justification,

24  causing Debtors to become insolvent.  The SSR Trust withdrew more than $6 million from SK

25  Foods between January 2005 and February 2009, and SKPM withdrew almost $2.5 million over

26  that same period.

27      97.     Several former employees, brokers and directors of SK Foods have pled guilty to

28  participating in a conspiracy involving honest services mail fraud and introducing adulterated or

Adversary Complaint                                                          PHDATA 3265972_v1

misbranded food with the intent to defraud and mislead.  Defendants allowed this conspiracy to take place, and on information and belief, participated in this conspiracy.  As a result of the conspiracy, the Federal Bureau of Investigation conducted a raid on SK Foods' facilities in or around April 2008.  Publicity of the raid and the conspiracy led many customers to abandon SK Foods and caused much damage to SK Foods.

### Count I (SK Foods):  Breach of Fiduciary Duty against Scott Salyer, SKPM Corporation, and the Scott Salyer Revocable Trust

98.     The Trustee hereby incorporates each of the preceding paragraphs of the Complaint as though set forth fully herein.

99.     Salyer, as a controlling member, officer, director, and shareholder of the general partners of the Debtors, and as someone who exercised a high degree of control over SK Foods, owed fiduciary duties of loyalty and care to SK Foods.

100.     SKPM, as the general partner of SK Foods, owed a fiduciary duty of loyalty and care to SK Foods.

101.     The SSR Trust, as a partner of SK Foods and a 100% owner of the general partner of SK Foods, owed fiduciary duties of loyalty and care to SK Foods.

102.     Salyer, SKPM, and the SSR Trust owed a duty of loyalty to SK Foods  in the following manners:

    a.  to account to SK Foods and hold as trustee for it any property, profit or benefit derived by them in the conduct of SK Foods' activities, or derived from their use of SK Foods' property.

    b.  to refrain from dealing with SK Foods in the conduct of their activities as or on behalf of a party having an interest adverse to SK Foods and to refrain from using SK Foods' assets for the benefit of Affiliated Defendants or other Salyer-controlled entities and to the detriment of SK Foods.

    c.  to refrain from competing with SK Foods in the conduct of SK Foods' activities.

    d.  not to engage in self-dealing for their benefit and to the detriment of SK Foods.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

103.     Salyer, SKPM, and the SSR Trust owed a duty of care to SK Foods to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

104.     Salyer, SKPM, and the SSR Trust breached the aforesaid duties as set forth more particularly above, including but not limited to:

a.   By transferring, or causing SK Foods to transfer, assets and money rightfully belonging to SK Foods to other entities in which they had an interest, with no or inadequate consideration to SK Foods.

b.   By purporting to terminate contract rights of SK Foods to the detriment of SK Foods and its creditors and to the benefit of other entities in which they had an interest.

c.   By transferring, or causing SK Foods to transfer, other funds and assets of SK Foods, through "loans" or "prepaid expenses" and other mechanisms, when there was no legitimate business reason to SK Foods, but solely for their own personal benefit or the benefit of entities in which they had an interest.

d.   By using SK Foods' funds to capitalize and operate other entities in which they had an interest, such as Salyer American Fresh Foods, including the expenditure of SK Foods' funds for retrofitting SK Frozen Foods' facility and purchasing equipment.

e.   By transferring assets of SK Foods, such as the Drum Line, to other entities in which they had an interest.

f.   By using SK Foods' funds to pay for goods or services unrelated to SK Foods' business but related to their personal interests or the interests of other entities in which they had an interest.

g.   By withdrawing funds from SK Foods, or causing funds to be withdrawn, for no legitimate business reason and without adequate consideration.

h.   By transferring opportunities of SK Foods, or causing those opportunities to be transferred, to other entities in which they had an interest for no or inadequate consideration, such as for the purchase of land needed by SK Foods for wastewater discharge and the divestiture of the Foreign Entities.

i.   By using assets of SK Foods as leverage for benefitting themselves personally or other entities in which they had an interest, with no compensation or consideration provided to SK Foods.

16

PHDATA 3265972_v1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

j.  By taking positions on behalf of themselves and other entities in which they had an interest that were adverse to SK Foods, such as by terminating the Wastewater Discharge Agreements.

k.  By unilaterally setting or changing the terms of contracts or agreements to which SK Foods was a party to the detriment of SK Foods.

l.  By charging hundreds and hundreds of thousands of dollars in expenses that lacked legitimate business purpose and were made for Salyer's own personal benefit.

m.  By using corporate assets for their own benefit without any corporate benefit to SK Foods but at SK Foods' direct or indirect expense.

n.  By failing to act in good faith toward SK Foods in the conduct of SK Foods' financial and business affairs in furtherance of SK Foods' best interests.

o.  By failing and refusing to recognize losses of SK Foods at the time they were incurred.

p.  By engaging in tortious conduct toward SK Foods.

q.  By permitting and/or failing to prevent a conspiracy intended to defraud and mislead.

r.  By participating in a conspiracy to defraud and mislead.

s.  By failing to ensure SK Foods' compliance with all applicable laws and regulations.

t.  By allowing their counsel access to confidential information of SK Foods, and then using that information to the detriment of SK Foods.

u.  By other activities detrimental to SK Foods that may be learned during the course of discovery.

105.  As set forth above, Salyer has breached his duties as an officer and director of SK Foods.  He has also breached his duties as set forth above as the officer and director of SKPM, the general partner of SK Foods, and the SSR Trust, the limited partner of SK Foods.

106.  Given the Defendants' ownership interests in the related and affiliated entities, Defendants had divided loyalties.  They disregarded their duties of loyalty and care to SK Foods and took advantage of SK Foods for the benefit of the other entities they controlled.

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

107. All of the above breaches were to the detriment of SK Foods and its creditors.

WHEREFORE, the Trustee prays for a judgment as set forth below.

### *Count II (SK Foods):  Breach of Partnership Agreement*

108. The Trustee hereby incorporates each of the preceding paragraphs of the Complaint as though set forth fully herein.

109. A true and correct copy of the Partnership Agreement of SK Foods is attached hereto as Exhibit A.

110. The Trustee and SK Foods have performed all conditions, covenants and promises required of them under the Partnership Agreement, except where performance was prevented or excused by Defendants' conduct.

111. Section 4.1 of the Partnership Agreement states that the General Partner shall operate and manage the Partnership's business and affairs in accordance with the terms of the Agreement, and will apply himself diligently in and about the business of the Partnership to the utmost of his skill, power and ability.

112. Salyer and SKPM breached the Partnership Agreement by, among other things, failing to operate and manage the Partnership's business and affairs in accordance with the terms of the Agreement and failing to apply themselves diligently to the utmost of their skill, power and ability.

113. Section 4.2 of the Partnership Agreement provides that the General Partner shall not be authorized to do any act which would make it impossible to carry on the business of the Partnership, or to possess partnership assets or property, or assign the rights in specific Partnership assets or property, for other than a Partnership purpose.

114. Salyer and SKPM breached the Partnership Agreement by, among other things, possessing and assigning rights in SK Foods property and assets for other than Partnership purposes, and for doing acts which rendered SK Foods insolvent and unable to carry on the business of the Partnership.

PHDATA 3265972_v1

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

115.    Section 4.3.1 of the Partnership Agreement provides that the General Partner shall take all actions which may be necessary or appropriate for the continuation of the Partnership's existence.  Section 4.3.3 of the Partnership Agreement provides that the General Partner shall devote a reasonable amount of time as necessary to managing the Partnership business and performing the General Partner's duties.

116.    Salyer and SKPM breached the Partnership Agreement by, among other things, failing to take actions necessary for the continuation of the Partnership's existence and by failing to devote a sufficient amount of time to managing the business and performing the required duties.

117.    SK Foods has been harmed as a result of the afore-mentioned breaches.

WHEREFORE, the Trustee prays for judgment as set forth below.

### Count III (RHM):  Breach of Fiduciary Duty against Defendants Scott Salyer and the Scott Salyer Revocable Trust

118.    The Trustee hereby incorporates each of the preceding paragraphs of the Complaint as though set forth fully herein.

119.    The SSR Trust, as a majority shareholder of RHM, owed fiduciary duties of loyalty and care to RHM.

120.    Salyer as an officer and director of RHM, and as the trustee and beneficiary of the trust holding a majority of the ownership interests of RHM, owed fiduciary duties of loyalty and care to RHM.

121.    Salyer and the SSR Trust owed a duty of loyalty to RHM  in the following manners:

   a.   to account to RHM and hold as trustee for them any property, profit or benefit derived by them in the conduct of RHM's activities, or derived from their use of RHM's' property.

   b.   to refrain from dealing with RHM in the conduct of their activities as or on behalf of a party having an interest adverse to RHM and to refrain from using RHM's assets for the benefit of Affiliated Defendants or other Salyer-controlled entities and to the detriment of RHM.

19

PHDATA 3265972_v1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

c.   to refrain from competing with RHM in the conduct of RHM's activities.

d.   not to engage in self-dealing for their benefit and to the detriment of RHM.

122.   Salyer and the SSR Trust owed a duty of care to RHM to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

123.   Salyer and the SSR Trust breached the aforesaid duties as set forth more particularly above, including but not limited to:

a.   By transferring, or causing RHM to transfer, assets and money rightfully belonging to RHM to other entities in which they had an interest, with no or inadequate consideration to RHM.

b.   By purporting to terminate contract rights of RHM to the detriment of RHM and its creditors and to the benefit of other entities in which they had an interest.

c.   By transferring opportunities of RHM, or causing those opportunities to be transferred, to other entities in which they had an interest for no or inadequate consideration, such as for the purchase of land needed by RHM for wastewater discharge.

d.   By taking positions on behalf of themselves and other entities in which they had an interest that were adverse to RHM, such as by terminating Wastewater Discharge Agreements.

e.   By failing to act in good faith toward RHM in the conduct of the RHM's financial and business affairs in furtherance of the RHM's best interests.

f.   By failing and refusing to recognize losses of RHM at the time they were incurred.

g.   By engaging in tortious conduct toward RHM.

h.   By permitting and/or failing to prevent a conspiracy intended to defraud and mislead.

i.   By participating in a conspiracy to defraud and mislead.

j.   By failing to ensure RHM's compliance with all applicable laws and regulations.

k.   By allowing their counsel access to confidential information of the Debtors and then using that information to the detriment of RHM.

l.   By other activities detrimental to RHM that may be learned during the course of discovery.

PHDATA 3265972_v1

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

124.  All of the above breaches were to the detriment of, and caused harm to, RHM and its creditors.

WHEREFORE, the Trustee prays for a judgment as set forth below.

### *Prayer For Relief*

WHEREFORE, the Trustee prays for judgment as follows:

1.  On Count I, judgment in favor of SK Foods and against defendants Salyer, SKPM and the SSR Trust, jointly and severally, in an amount to be proved at trial;

2.  On Count II, judgment in favor of SK Foods and against defendants Salyer, SKPM and the SSR Trust, jointly and severally, in an amount to be proved at trial;

3.  On Count III, judgment in favor of RHM and against defendants Salyer and the SSR Trust, jointly and severally, in an amount to be proved at trial;

4.  Awarding prejudgment and post-judgment interest against each Defendant;

5.  For punitive damages;

6.  For costs of suit incurred herein; and

7.  For such other and further relief the Court deems just and proper.

Dated:  January 11, 2010              SCHNADER HARRISON SEGAL & LEWIS LLP



                                      /s/ Gregory C. Nuti
                                      Gregory C. Nuti
                                      Attorneys for Plaintiff Bradley D. Sharp,
                                      Chapter 11 Trustee

Adversary Complaint                                    PHDATA 3265972_v1