ANDREA M. MILLER, State Bar No. 88992
JAMES C. KEOWEN, State Bar No. 173546
NAGELEY, MEREDITH & MILLER, INC.
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 386-8292
Facsimile: (916) 386-8952
amiller@nmlawfirm.com
jimkeowen@nmlawfirm.com

Counsel for SK PM Corp., SK Foods, LLC, SKF
Canning, LLC, Blackstone Ranch Corporation,
Monterey Peninsula Farms, LLC, Salyer Management
Company, LLC, SK Farms Services, LLC, SK Frozen
Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC
Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC,
SKF Aviation, LLC, and CSSS, LP d/b/a Central Valley
Shippers

*Please see continuation page for a complete list of the
moving parties and their respective counsel.*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

In re:

SK FOODS, LP, a California limited
partnership, et al.,

        Debtors.

_____

BRADLEY SHARP, et al.,

        Plaintiff,

v.

SSC FARMS I, LLC, et al.,

        Defendants.

_____

CASE NO.: 09-29162-D-11
Chapter 11

**REQUEST FOR JUDICIAL
NOTICE IN SUPPORT OF
DEFENDANTS' SUPPLEMENT
MOTION TO STAY ADVERSARY
PROCEEDINGS**

**Date:**     **June 15, 2011**
**Time:**     **10:00 a.m.**
**Courtroom:**   **34**

Adv. Proc. No. 09-02692

DCN: MSS-2

| | |
|---|---|
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02014 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| SCOTT SALYER, as trustee of the Scott Salyer Revocable Trust, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02015 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| SCOTT SALYER, in his individual capacity and as trustee of the Scott Salyer Revocable Trust, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02016 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| SKF AVIATION, LLC, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 10-02017 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| FRED SALYER IRREVOCABLE TRUST, et al., | |
| Defendants. | |
| BRADLEY SHARP, et al., | Adv. Proc. No. 09-02543 |
| Plaintiff, | DCN: MSS-2 |
| v. | |
| CSSS, L.P., et al., | |
| Defendants. | |

**CONTINUATION SHEET:  PARTIES**

**AND THEIR RESPECTIVE COUNSEL**

| | |
|---|---|
| ANDREA M. MILLER, State Bar No.  88992<br>JAMES C. KEOWEN, State Bar No. 173546<br>NAGELEY MEREDITH & MILLER, INC.<br>8001 Folsom Boulevard, Suite 100<br>Sacramento, California  95826<br>Telephone:  (916) 386-8292<br>Facsimile:  (916) 386-8952<br>amiller@nmlawfirm.com<br>jimkeowen@nmlawfirm.com<br><br>Counsel for SK PM Corp., SK Foods, LLC,<br>SKF Canning, LLC, Blackstone Ranch<br>Corporation, Monterey Peninsula Farms, LLC,<br>Salyer Management Company, LLC, SK Farms<br>Services, LLC, SK Frozen Foods, LLC, SS<br>Farms, LLC, SSC Farming, LLC, SSC Farms I,<br>LLC, SSC Farms II, LLC, SSC Farms III, LLC,<br>SKF Aviation, LLC, and CSSS, LP d/b/a<br>Central Valley Shippers | STEVEN H. FELDERSTEIN, State Bar No.<br>056978<br>PAUL J. PASCUZZI, State Bar No. 148810<br>TANIA M. MOYRON, State Bar No. 235736<br>FELDERSTEIN FITZGERALD<br>WILLOUGHBY & PASCUZZI LLP<br>400 Capitol Mall, Suite 1450<br>Sacramento, California  95814<br>Telephone:  (916) 329-7400<br>Facsimile:  (916) 329-7435<br>sfelderstein@ffwplaw.com<br>ppascuzzi@ffwplaw.com<br>tmoyron@ffwplaw.com<br><br>Counsel for Scott Salyer, individually and as<br>trustee of the Scott Salyer Revocable Trust, and<br>the Scott Salyer Revocable Trust |
| MALCOLM S. SEGAL, State Bar No.  075481<br>SEGAL & KIRBY<br>770 L Street, Suite 1440<br>Sacramento, California  95814<br>Telephone:  (916) 441-0828<br>Facsimile:  (916) 446-6003<br>msegal@segalandkirby.com<br><br>Counsel for Scott Salyer, individually and as<br>trustee of the Scott Salyer Revocable Trust, and<br>the Scott Salyer Revocable Trust | LARRY J. LICHTENEGGER, State Bar No.<br>048206<br>LICHTENEGGER LAW OFFICES<br>3850 Rio Road, Suite 58<br>Carmel, CA 93926<br>Telephone: (831) 626-2801<br><br>Counsel for the Fred Salyer Irrevocable Trust<br>and Gerard Rose as trustee of the Fred Salyer<br>Irrevocable Trust |

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS'
SUPPLEMENT MOTION TO STAY ADVERSARY PROCEEDINGS**

Defendants Scott Salyer individually and as Trustee of the Scott Salyer Revocable Trust, the Scott Salyer Revocable Trust, SK PM Corp., SK Foods, LLC, SKF Canning, LLC, Blackstone Ranch Corporation, Monterey Peninsula Farms, LLC, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SKF Aviation, LLC, CSSS, LP d/b/a Central Valley Shippers, the Fred Salyer Irrevocable Trust, and Gerard Rose as Trustee of the Fred Salyer Irrevocable Trust (collectively "Defendants") hereby request the Court to take judicial notice of the following documents in support of their motion for stay of the following adversary proceedings pending before this Court: (1) _Sharp v. Salyer, et al._, Adv. P. No. 10-02014; (2) _Sharp v. CSSS, L.P._, Adv. P. No. 09-02543; (3) _Sharp v. SS Farms I, LLC, et al._, Adv. P. No. 09-02692; (4) _Sharp v. Salyer, et al._, Adv. P. No. 10-02015, (5) _Sharp v. SKF Aviation, et al._, Adv. P. No. 10-02016; and (6) _Sharp v. Fred Salyer Irrevocable Trust_, Adv. P. No. 10-02017:

| Exhibit | Description |
|---------|-------------|
| A | December 10, 2010 Order on Multiple Appeals from Order Denying Motion for a Stay of Proceedings ("Initial District Court Order") |
| B | April 14, 2011 Order on Trustee's Motion for Rehearing on December 10, 2010 Order Reversing the Denial of a Stay of Proceedings ("Remand Order") |

DATED: April 28, 2011

NAGELEY MEREDITH & MILLER, INC.

/S/ JAMES C. KEOWEN

JAMES C. KEOWEN
Counsel for SK PM Corp., SK Foods, LLC, SKF Canning, LLC, Blackstone Ranch Corporation, Monterey Peninsula Farms, LLC, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SKF Aviation, LLC, and CSSS, LP d/b/a Central Valley Shippers

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP

/S/ PAUL J. PASCUZZI

PAUL J. PASCUZZI
Counsel for Scott Salyer, individually and as trustee of the Scott Salyer Revocable Trust, and the Scott Salyer Revocable Trust

SEGAL & KIRBY LLC

/S/ MALCOLM S. SEGAL
MALCOLM S. SEGAL
Counsel for Scott Salyer, individually and as
trustee of the Scott Salyer Revocable Trust,
and the Scott Salyer Revocable Trust

LICHTENEGGER LAW OFFICES

/S/ LARRY LICHTENNEGER
LARRY LICHTENNEGER
Counsel for the Fred Salyer Irrevocable Trust
and Gerard Rose as trustee of the Fred Salyer
Irrevocable Trust



1

2

3

4

5

6                            UNITED STATES DISTRICT COURT

7                           EASTERN DISTRICT OF CALIFORNIA

8    IN RE:

9    SK FOODS, L.P.

10            Debtor.

11   BRADLEY SHARP,                      CIV. NO. S-10-1492 LKK

12            Plaintiff,

13                v.

14   SSC FARMS 1, LLC, et al.,

15            Defendants.
                                    /
16   IN RE:

17   SK FOODS, L.P.                       CIV. NO. S-10-1493 LKK

18            Debtor.
                                    /
19   IN RE:

20   SK FOODS, L.P.

21            Debtor.

22   BRADLEY SHARP,                      CIV. NO. S-10-1496 LKK

23            Plaintiff,

24                v.

25   CSSS, L.P., et al.,

26            Defendants.
                                    /

1    IN RE:

2    SK FOODS, L.P.

3            Debtor.

4    BRADLEY SHARP,                          CIV. NO. S-10-1497 LKK

5            Plaintiff,

6                    v.

7    FRED SALYER IRREVOCABLE
     TRUST, et al.,

8            Defendants.

9    _____/

10   IN RE:

11   SK FOODS, L.P.

12           Debtor.

13   BRADLEY SHARP,                          CIV. NO. S-10-1498 LKK

14           Plaintiff,

15                   v.

16   SKF AVIATION, LLC., et al.,

17           Defendants.

18   _____/

19   IN RE:

     SK FOODS, L.P.
20
             Debtor.
21
     BRADLEY SHARP,                          CIV. NO. S-10-1499 LKK
22
             Plaintiff,
23
                     v.
24
     SCOTT SALYER, et al.,
25
             Defendants.
26   _____/

                                2

```
 1   IN RE:

 2   SK FOODS, L.P.

 3            Debtor.

 4   BRADLEY SHARP,                        CIV. NO. S-10-1500 LKK

 5            Plaintiff,

 6            v.
                                           O R D E R
 7   SCOTT SALYER, et al.,

 8            Defendants.
     _____/

 9

10        Before  the  court  are  several  appeals  of  an  order  of  the

11   Bankruptcy   Court   denying   Appellants'   motion   for   a   stay   of

12   proceedings pending resolution of a related criminal matter also

13   before this court, U.S.A. v. Salyer, No. 2:10-cr-00061-LKK. The

14   Appellee moves to dismiss the appeal on jurisdictional grounds and

15   opposes the appeal on the merits. For the reasons described below,

16   the order of the Bankruptcy Court is reversed.

17                            I. BACKGROUND

18        A.    The Criminal Proceeding

19        On January 5, 2010, the government filed a sealed complaint

20   against Frederick Scott Salyer ("Salyer"). An arrest warrant was

21   issued by a magistrate judge later that day. On February 4,

22   2010, Federal Bureau of Investigations ("FBI") officers arrested

23   Salyer. On February 18, 2010, the U.S.A. filed an indictment.

24        On April 29, 2010, the government filed a superseding

25   indictment. It brings twelve counts and two forfeiture

26   allegations against Salyer. These include two counts under 18
```

1  U.S.C § 1962(c) for conducting and conspiring to conduct the

2  affairs of an enterprise though a pattern on racketeering

3  activity, three counts under 18 U.S.C. § 1343 for wire fraud,

4  one count under 18 U.S.C. § 1519 for destruction, alteration, or

5  falsification of records in a federal investigation, and five

6  counts under 15 U.S.C. § 1 for conspiracy in restraint of

7  trade.[1]

8  With respect to the first count of racketeering, the

9  government alleges that Salyer was the primary leader of SK

10 Foods. Superceding Indictment 3. It claims that Salyer was part

11 of an enterprise that, *inter alia*, "increas[ed] SK Foods'

12 profits by fraudulently inducing certain of SK Foods' customers

13 to pay for adulterated and misbranded processed tomato products

14 by causing the falsification of . . . grading factors and data

15 contained on the quality control documents that accompanied

16 customer-bound shipments of processed tomato products that were

17 produced, purchased, and sold by SK Foods . . . ." Id. at 10.

18 The U.S.A. alleges that Salyer engaged in these activities from,

19 approximately, January 1998 through April 2008. Id. at 13. The

20 government further alleges numerous acts that it claims

21 constitute a pattern of racketeering activity. These include

22 several claims of wire and mail fraud relating to the sale of

23 tomato products to various entities, including creditors in the

24

25    [1] As is almost self evident the court has found the case
   complex within the meaning of the Speedy Trial Act, which results
26 in the case not subject to the time strictures of the act.

4

1 instant bankruptcy proceedings, and claims of bribery.

2     In the second count of racketeering, the government claims
3 that Salyer conspired with persons employed by and associated
4 with SK Foods to conduct the acts described above during the
5 same time period. Id. at 39-40.

6     The three counts of wire fraud include communications to
7 purchasers of SK Foods' tomato product. Id. at 40-49. Each
8 concerns allegations of bribery of certain employees of the
9 purchasing companies. These companies include creditors in the
10 instant bankruptcy proceedings.

11     With respect to the count of destruction, alteration, or
12 falsification of records in a federal investigation, the
13 government alleges that Salyer altered and falsified, or caused
14 others to alter and falsify, the minutes of a December 14, 2007
15 Board of Directors meeting for the SK Foods Entities. Id. at 51.
16 It claims that he caused the removal of references to Randy
17 Rahal as a Director and Officer of SK Foods several months after
18 Rahal pled guilty to a three count information in this court.
19 Id. at 50. The factual basis for Rahal's plea indicated that he
20 served on the SK Foods Board of Directors from 2004 to 2008 and
21 routinely paid bribes on behalf of SK Foods. Id. at 50-51.

22     The five counts of price fixing concern alleged
23 conspiratorial activity to fix the price of SK Foods tomato
24 products for several companies, including creditors in the
25 instant bankruptcy proceedings. Id. at 52-61.

26     The two forfeiture allegations seek recovery of all real

1   and personal property that constitute or is derived from the

2   proceeds traceable to the racketeering and wire fraud counts,

3   which would apparently include property and proceeds otherwise

4   subject to the bankruptcy proceeding.

5       **B.    The Bankruptcy Proceedings**

6       On appeal is an order of the Bankruptcy Court denying

7   Appellants' motion to stay proceedings in seven adversarial

8   actions. These include (1) an action to substantively

9   consolidate various non-debtor SK Foods entities with the SK

10  Foods estate, No. 10-02014; (2) an action to avoid a fraudulent

11  transfer of a drum line to CSSS, an Appellant entity, pursuant

12  to a written contract, No. 09-02543; (3) an action seeking title

13  to three parcels of real property on the grounds that SK Foods

14  provided funds for the purchase of the property and was not

15  repaid, No. 09-02692; (4) a claim of breach of fiduciary duty

16  against Salyer premised on the allegations in the previous three

17  actions, No. 10-02015; (5) an action to avoid allegedly

18  preferential and fraudulent transfers, No. 10-02016; (6) an

19  action to recover money that was allegedly loaned by SK Foods to

20  Salyer to pay for a life insurance policy, No 10-02017; and (7)

21  an action for substantive consolidation of the SK Foods and the

22  RHM Estates, No. 09-29162. The RHM Estates are not parties to

23  this appeal.

24      **C.    Procedural Posture**

25      On April 28, 2010, Salyer, the Scott Salyer Revocable

26  Trust, SK PM Corp., SKF Canning, LLC, Blackstone Ranch

1  Corporation, Monterey Peninsula Farms, LLC, Salyer Management
2  Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS
3  Farms, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III,
4  LLC, SKF Aviation, LLC, CSSS, LP, Fred Salyer Irrevocable Trust,
5  and Gerard Rose as Trustee of Fred Salyer Irrevocable Trust
6  ("Appellants") filed a motion to stay the seven adversary
7  proceedings discussed above pending resolution of the criminal
8  proceedings against Salyer. They argued that a stay should be
9  issued, *inter alia*, to protect Salyer's Fifth Amendment rights
10 and the due process rights of the other Appellants who, they
11 contend, require Salyer's testimony to mount a defense to the
12 adversary proceedings. On May 4, 2010, Appellants filed in the
13 bankruptcy proceedings a request for judicial notice of the
14 Superceding Indictment of Salyer, which was filed on April 29,
15 2010. They did not attempt to amend or revise their motion in
16 light of the Superceding Indictment.

17     On May 12, 2010, the Official Committee of Unsecured
18 Creditors filed an opposition to Appellants' motion to stay.[2]
19 Also on May 12, 2010, Bradley Sharp, the Bankruptcy Trustee
20 ("Appellee" or "Trustee") filed a response to the motion to
21 stay. The Trustee argued, *inter alia*, that the indictment and
22 the adversary proceedings are not based on the same matter or
23 same or closely related facts, that prosecution of the adversary
24 proceedings will not impair Salyer's Fifth Amendment rights, and
25

26     [2] Only the Trustee has opposed the instant appeal.

7

1  that a stay is otherwise not appropriate.

2      On June 1, 2010, the Bankruptcy Court denied Appellants'
3  motion for a stay. It decided, *inter alia*, that, with one minor
4  exception, the factual allegations in the adversary proceedings
5  bear no significant relationship to the allegations in the
6  indictment. The court continued to balance the so-called Keating
7  factors, from which it determined that a stay of proceedings was
8  not proper. See infra Section III.B.1 (discussion of Keating
9  factors). This order was issued in all of the seven adversarial
10 proceedings discussed above.

11     On June 16, 2010, Appellants filed notices of appeal of
12 this order in each of the seven proceedings. On June 17, 2010,
13 Salyer filed in the criminal action an Emergency Application to
14 Enjoin and Stay Discovery of the bankruptcy proceedings. On June
15 18, 2010, the court temporarily stayed discovery in the
16 bankruptcy proceedings in light of the June 17, 2010 motion. On
17 August 3, 2010, the court held a hearing on the emergency
18 application. As a result of the hearing, the court continued the
19 stay until resolution of the instant appeals.

20     On August 4, 2010, Appellants filed an opening brief. They
21 argue that, *inter alia*, the criminal indictment and the
22 adversary proceedings overlap, that the denial of the stay
23 offends the due process rights of the non-debtor entities, and
24 that the Bankruptcy Court did not properly apply the Keating
25 factors. On August 19, 2010, the Trustee filed a brief in
26 opposition. He contended that the Appellants failed to show that

1  the Bankruptcy Court abused its discretion in denying the stay

2  of proceedings. Appellants filed a reply on August 3, 2010.

3      The Trustee also filed two motions relating to the appeals.

4  First, on August 16, 2010, the Trustee filed a motion to dismiss

5  the appeals on the grounds that the court lacks jurisdiction to

6  hear them. Second, the Trustee filed a motion to strike a

7  declaration filed in support of Appellants' brief on the ground

8  that the evidence was not presented to the Bankruptcy Court. The

9  court heard oral argument on the appeals and motions on October

10  12, 2010.

11                           **II.  STANDARD**

12      The standard of review of bankruptcy court decisions by

13  district courts is well-established, and uncontested in the

14  instant action. See Appellants' Opening Brief re: Stay at 4;

15  Appellants' Opening Brief re: Preliminary Injunction at 2;

16  Appellee's Opening Brief re: Stay at 2-3. When reviewing

17  decisions of a bankruptcy court, district courts apply standards

18  of review applicable to the courts of appeals when reviewing

19  district court decisions. In re Baroff, 105 F.3d 439, 441 (9th

20  Cir. 1997); see also In re Fields, No. CIV. S-09-2930 FCD, 2010

21  WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of

22  review over a bankruptcy court's decision is identical to the

23  standard used by circuit courts reviewing district court

24  decisions.") (citation omitted).

25      The bankruptcy court's conclusions of law are reviewed de

26  novo. In re Sunnymead Shopping Center Co., 178 B.R. 809, 814

                                 9

1   (9th Cir. 1995) (citing In re Pecan Groves of Arizona, 951 F.2d

2   242, 244 (9th Cir. 1991)). District courts review the bankruptcy

3   court's findings of fact for clear error. In re Sunnymead

4   Shopping Center Co., 178 B.R. at 814 (citing In re Siriani, 967

5   F.2d 302, 303-04 (9th Cir. 1992)); see also Fed. R. Bank. P.

6   8013 ("Findings of fact, whether based on oral or documentary

7   evidence, shall not be set aside unless clearly erroneous . . .

8   .")

9       District courts review a "bankruptcy court's choice of

10  remedies . . . for an abuse of discretion, since it has broad

11  equitable remedial powers." In re Sunnymead Shopping Center Co.,

12  178 B.R. at 814 (citing In re Goldberg, 168 B.R. 382, 284 (9th

13  Cir. 1994) (other citations omitted.). The Ninth Circuit has

14  held that, "Under this standard, 'a reviewing court cannot

15  reverse unless it has a definite and firm conviction that the

16  court below committed a clear error of judgment in the

17  conclusion it reached upon a weighing of the relevant factors."

18  In re Sunnymead Shopping Center Co., 178 B.R. at 814 (quoting In

19  re Goldberg, 168 B.R. at 384). With respect to review of a

20  denial of a motion to stay, district courts review a bankruptcy

21  court's "ruling on a party's request to stay proceedings for an

22  abuse of discretion." Fed. Sav. & Loan Ins. Corp. v. Molinaro,

23  889 F.2d 899, 902 (9th Cir. 1989) (citing Mediterranean

24  Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th

25  ////

26  ////

10

1  Cir. 1983)).[3]

2                    **III. ANALYSIS**

3      **A.    Motion to Dismiss**

4      The Trustee moves to dismiss the instant appeal on the

5  grounds that this court lacks jurisdiction to hear it.[4]

6  Specifically, the Trustee contends that the order denying the

7  stay is not a final order and is not appropriate for

8  interlocutory review. Appellants argue that this court has

9  jurisdiction because this order is final under the irreparable

10 injury doctrine and the pragmatic approach to assessing finality

11 in bankruptcy proceedings. They further argue that the appeal is

12 properly subject to interlocutory review.

13     Under 28 U.S.C. § 158(a), "district courts . . . have

14 jurisdiction to hear appeals . . . with leave of the court, from

15 interlocutory orders and decrees, of bankruptcy judges entered

16 in cases and proceedings referred to the bankruptcy judges under

17

18

19     [3] It appears to this court quite odd that district courts
   review decisions of bankruptcy courts in this manner given that
20 bankruptcy courts are a subsidiary division of district courts. It
   may be that the restricted standards of review are merely a way of
21 protecting both courts from unnecessary repetition of frivolous
   contentions, and that in more serious matters district courts
22 should not apply such a deferential review. Nonetheless, this court
   does not consider whether district courts may depart from this
23 standard of review in unusual circumstances because all parties
   agree as to the applicable standard and there appears to be no
24 support for that position, in any event.

25     [4] The Trustee has also moved to strike a declaration filed in
   support of the appeal. The court will consider this motion along
26 with its discussion of the merits of the appeal itself.

1 section 157 of this title."[5] Section 157 allows district courts
2 to refer any or all cases under title 11 to a bankruptcy court.
3 The district court here so referred the instant matters on
4 appeal to the bankruptcy court. Accordingly, district courts
5 have "discretionary appellate jurisdiction over . . .
6 interlocutory order[s] of a bankruptcy court." In re Kassover,
7 343 F.3d 91, 94 (2d Cir. 2003); see Matter of Texas Extrusion
8 Corp., 844 F.2d 1142, 1156 (5th Cir. 1988) (same); In re
9 Laurent, 149 Fed. Appx. 833, 835 (11th Cir. 2005); see also
10 Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 441 n.1
11 (9th Cir. 1983) (interpreting similar language that was part of
12 28 U.S.C. § 1334(b) prior to 1984 modification).

13    This type of appellate jurisdiction differs significantly
14 from the jurisdiction granted to Courts of Appeal to hear
15 appeals of interlocutory orders. See In re Kassover, 343 F.3d at
16 94; Fondiller, 707 F.2d at 441 n.1. Specifically, the district
17 court maintains original jurisdiction over bankruptcy
18 proceedings, and merely refers such proceedings to bankruptcy
19 courts. In re Combustion Engineering, Inc., 391 F.3d 190, 225
20 (3d Cir. 2004) (citing 28 U.S.C. §§ 151, 157(a)); 28 U.S.C. §
21 1334(b) ("[T]he district courts shall have original but not

22

23    [5] The court notes that Appellants did not file a motion for
24 leave to appeal the denial of their motion for a stay of
   proceedings. Under Fed. R. Bank. 8003(c), "If a required motion for
   leave to appeal is not filed, but a notice of appeal is timely
25 filed, the district court . . . may consider the notice of appeal
   as a motion for leave to appeal." The court so considers the notice
26 of appeal in this case.

1  exclusive jurisdiction of all civil proceedings arising under
2  title 11, or arising in or related to cases under title 11.");
3  28 U.S.C. § 157 ("Each district court may provide that any or
4  all cases under title 11 and any or all proceedings arising
5  under title 11 or arising in or related to a case under title 11
6  shall be referred to the bankruptcy judges for the district.").
7  Thus, a district court may decide to hear an interlocutory
8  appeal of any order of a bankruptcy court subject only to review
9  by the Court of Appeals for abuse of discretion.

10     In light of this broad authority to hear interlocutory
11  appeals, the court does not decide whether the order at issue is
12  final nor does it determine whether it falls within any of the
13  exceptions briefed by the parties. Rather, the court grants
14  Appellants leave to appeal the Bankruptcy Court's order on the
15  grounds that determining whether to stay the proceedings will
16  significantly effect the nature of the bankruptcy proceedings
17  and, conceivably, the criminal proceedings pending in this
18  court. Thus, the Trustee's motion to dismiss is denied.

19     **B.   Merits of the Appeal**

20          **1.   Standard to Stay Proceedings**

21     Stays of civil proceedings pending the outcome of criminal
22  proceedings are not ordinarily required by the Constitution.
23  Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th
24  Cir. 1995) (citations omitted). The Ninth Circuit has held that,
25  "[I]n the absence of substantial prejudice to the rights of the
26  parties involved, [simultaneous] parallel [civil and criminal]

1  proceedings are unobjectionable under our jurisprudence." Id.

2  (quoting S.E.C. v. Dresser Indust., Inc., 628 F.2d 1368, 1374

3  (D.C. Cir. 1980)). A court may, however, decide in its

4  discretion to stay civil proceedings "when the interests of

5  justice seem [] to require such action." Id. (internal citations

6  omitted).

7      When deciding whether to stay civil proceedings, courts

8  should consider "the particular circumstances and competing

9  interests involved in the case[s]." Id. (quoting Federal Sav. &

10  Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989)).

11  The Circuit has instructed the court to consider "the extent to

12  which the defendant's fifth amendment rights are implicated."

13  Id. (internal quotation omitted).

14      Additionally, courts "should generally consider the

15  following factors:

16      (1)   the interest of the plaintiffs in proceeding

17              expeditiously with this litigation or any particular

18              aspect of it, and the potential prejudice to

19              plaintiffs of a delay;

20      (2)   the burden which any particular aspect of the

21              proceedings may impose on defendants;

22      (3)   the convenience of the court in the management of its

23              cases, and the efficient use of judicial resources;

24      (4)   the interests of persons not parties to the civil

25              litigation; and

26  ////

14

1     (5)   the interest of the public in the pending civil and

2        criminal litigation."

3   Id. at 324-25 (citing Molinaro, 889 F.2d at 903).

4     The Ninth Circuit has cautioned, however, that, "A

5   defendant has no absolute right not to be forced to choose

6   between testifying in a civil matter and asserting his Fifth

7   Amendment privilege. Not only is it permissible to conduct a

8   civil proceeding at the same time as a related criminal

9   proceeding, even if that necessitates invocation of the Fifth

10  Amendment privilege, but it is even permissible for the trier of

11  fact to draw adverse inferences from the invocation of the Fifth

12  Amendment in a civil proceeding." Id. at 326. Despite the

13  generosity of the standard, it is nonetheless true that

14  permitting simultaneous proceedings may seriously undermine the

15  ability of a person presumed innocent to defend himself and may

16  provide the prosecution with an undue advantage because it will

17  have access to the evidence tendered in the bankruptcy

18  proceedings.

19     **2.   Factual Findings**

20    While this court reviews the Bankruptcy Court's decision to

21  deny the stay on an abuse of discretion standard, it may

22  nonetheless review the factual findings of the Bankruptcy Court

23  for clear error. Consequently, if the court finds any of the

24  Bankruptcy Court's findings of fact to be clearly erroneous, it

25  may reverse those findings and any order premised on the

26  findings.

1        In its order denying Appellants' motion for a stay, the

2   Bankruptcy Court made the following findings of fact:

3        (1)   That the adversary proceedings bear no significant

4              relationship to the allegations in the superceding

5              indictment against Salyer. Memorandum Opinion at 3-6.

6        (2)   That the court does not foresee any testimony Salyer

7              might give in the adversary proceedings that would

8              legitimately be subject to Salyer's Fifth Amendment

9              rights. Memorandum Opinion at 5.

10       (3)   That the longer the adversary proceedings are delayed,

11             the less likely it is that the Trustee will be able to

12             recover the assets he seeks because there is a real

13             risk that Appellants would dissipate the assets of the

14             debtor entities. Memorandum Opinion at 8-9.

15       (4)   That the public's interests in ensuring that aggrieved

16             persons are made whole as rapidly as possible and in

17             the prompt resolution of civil cases far outweighs the

18             public's interest in the integrity of criminal cases

19             here because the government has not sought to

20             intervene in these adversary actions.[6] Memorandum

21             Opinion at 10.

22

23       [6] The government has intervened in non-bankruptcy civil
    proceedings relating to U.S.A. v. Salyer, and a stay is in place
    for those cases. See Morning Star Packing Company v. SK Foods LP,
24   2:09-cv-00208-MCE (E.D. Cal.); Four In One Company, Inc. v. SK
    Foods, LP, 2:08-cv-03017-MCE (E.D. Cal.). Stays are also in effect
25   for two other non-bankruptcy civil case. See Brewer v. Salyer,
    1:06-cv-01324-AWI-DLB (E.D. Cal.); Morning Star Packing Company v.
26   SK Foods, Merced County Superior Court Case No. CU 151242.

1      (5)   That the interest of the Trustee and the creditors in

2            a speedy resolution of the adversary proceedings is of

3            prime importance in this case. Memorandum Opinion at

4            6.

5      (6)   That the joint plan of liquidation proposed by the

6            secured creditors and the unsecured creditors are

7            often fragile and, thus, any delays in the adversary

8            proceedings would "almost certainly be to the

9            detriment of creditors." Memorandum Opinion at 9-10.

10     The court finds that the fifth and sixth findings of fact

11 are not clearly erroneous. However, the court determines that

12 the first four findings are clearly erroneous in whole or in

13 part.

14               i.   **Relationship Between Adversary Proceedings**
                      **and Criminal Indictment, Implication of**
15                    **Fifth Amendment**

16     The Bankruptcy Court correctly noted that, "the strongest

17 case for deferring civil proceedings until after completion of

18 criminal proceedings is where a party under indictment for a

19 serious offense is required to defend a civil or administrative

20 action involving the same matter." Dresser Indust., Inc., 628

21 F.2d at 1375-76. Specifically, "[t]he noncriminal proceeding, if

22 not deferred, might undermine the party's Fifth Amendment

23 privilege against self-incrimination, expand rights of criminal

24 discovery beyond the limits of Federal Rule of Criminal

25 Procedure 16(b), expose the basis of the defense to the

26 prosecution in advance of criminal trial, or otherwise prejudice

                                17

1  the case." Id. at 1376. In Dresser, the Court of Appeals
2  reasoned that, "[t]he case at bar is a far weaker one for
3  staying the administrative investigation [because no indictment
4  has been filed and, thus,] no Fifth Amendment privilege
5  threatened." The Ninth Circuit adopted this reasoning in
6  Molinaro, where it held that the district court did not abuse
7  its discretion by deciding that the burden on the defendant's
8  Fifth Amendment privilege was negligible because no related
9  criminal indictments were pending against him at the time of its
10 ruling. 889 F.2d at 903.

11      Ultimately, when considering a motion to stay proceedings,
12 courts must determine "the extent to which the defendant's fifth
13 amendment rights are implicated." Id. at 902. Here, the
14 Bankruptcy Court conducted a technical comparison of the
15 specific allegations in the criminal indictment and the
16 adversary proceedings. Accordingly, it "conclude[d] that, with
17 one minor exception, the factual allegations in the adversary
18 proceedings bear no significant relationship to the allegations
19 in the indictment." Memorandum Opinion at 3. The Bankruptcy
20 Court continued to reject Appellants' contention that the
21 reference to an enterprise in some of the adversary complaints
22 is the same enterprise alleged in the criminal proceeding. It
23 found that the enterprise alleged in the indictment was premised
24 upon allegations of "mail fraud, wire fraud, and bribery with
25 respect to the prices charged and quality of product sold to its
26 customers, whereas the adversary complaints allege inter-company

18

1 transfers among the Salyer entities themselves, commingling of
2 assets, common ownership, management, and control, intermingling
3 of business operations and activities, and so on." Id. at 4.

4 While the Bankruptcy Court may be correct that specific
5 allegations of the criminal indictment are, for the most part,
6 distinct from the specific allegations of the adversary
7 proceedings, its conclusion that these distinctions demonstrate
8 that Salyer's Fifth Amendment rights are not implicated is
9 clearly erroneous. As an initial matter, the assets sought in
10 the criminal forfeiture proceedings overlap to a significant
11 degree with the assets sought in the adversary proceedings.
12 Moreover, Salyer's Fifth Amendment rights are implicated any
13 time that he testifies or responds to discovery requests that
14 are admissible to prove that he engaged in the conduct alleged
15 in the indictment. This conduct can exceed the specific
16 allegations of the indictment. Specifically, under Fed. R. Evid.
17 404(b), evidence of crimes, wrongs, and acts not alleged in the
18 indictment, may be used to prove "motive, opportunity, intent,
19 preparation, plan, knowledge, identity, or absence of mistake or
20 accident." Under this rule, for example, evidence that Salyer
21 fraudulently transferred assets might be used to prove that
22 Salyer intended to commit the fraudulent acts alleged in the
23 indictment, or had a plan to conceal fraudulently obtained
24 assets. Indeed the asserted concealment of assets was a
25 predominant governmental theme relative to bail.

26 Put directly, even though the specific allegations of the

19

indictment and the adversary proceedings may differ, the
bankruptcy litigation seriously implicates Salyer's Fifth
Amendment rights. He has been criminally accused of engaging in
an enterprise though which he allegedly obtained assets, which
the Trustee is now seeking to recover and to prevent fraudulent
transfer of them. Accordingly, the Bankruptcy Court's finding
that the proceedings do not overlap and that Salyer's Fifth
Amendment rights are not implicated in the adversary proceedings
is clearly erroneous.[7]

### ii.  Risk that Appellants will Dissipate Assets

When considering whether the Trustee and creditors would
suffer prejudice if a stay were to issue, the Bankruptcy Court
reasoned as follows:

> In the present case, the court has already been
> sufficiently persuaded of a . . . risk of dissipation
> of assets to issue a preliminary injunction against
> the defendants in the adversary proceedings, who are
> moving parties in this motion, from transferring
> assets previously transferred to them by or through
> the debtor. The moving parties now argue that the
> injunction would protect the trustee and creditors
> from any risk of further dissipation of assets during
> the pendency of a stay. The court concludes to the
> contrary - the findings and conclusions upon which the
> injunction is based persuade the court that a real
> risk continues to exist.

---

[7] The court notes that the Trustee objects to the declaration
of counsel for Appellants filed in support of the appeal on the
grounds that it was not raised before the Bankruptcy Court. The
Trustee is correct that this court should not consider evidence
that was not before the Bankruptcy Court. Appellants agree that the
evidence was not presented to the Bankruptcy Court, but rather was
provided to this court to provide an overview of matters of which
the Bankruptcy Court was aware. Because this court has not relied
on the affidavit in reaching its conclusions, the motion to strike
is granted.

1  Memorandum Opinion at 9. The Bankruptcy Court does not in any

2  way address why the entrance of the preliminary injunction will

3  not protect the Trustee and the creditors. Appellants raised

4  this serious concern before the Bankruptcy Court. Failure to

5  provide any explanation as to why the preliminary injunction is

6  insufficient to protect the Trustee and creditors from

7  dissipation of assets due to debtor conduct is clear error.[8]

8  ### iii. Balance of Public Interests

9      In applying the Keating test, the Bankruptcy Court was

10 tasked to evaluate the public interest. It explained that while

11 it recognizes the public's interest in the integrity of criminal

12 cases, that interest is relatively low in the instant case

13 because the government has chosen not to intervene in the

14 adversary proceedings. The court has been unable to find any

15 case to support the contention that the weight of the public's

16 interest in the integrity of criminal proceedings is somehow

17 influenced by the prosecutor's decision to intervene. See, e.g.,

18 Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum, 2:09-cv-0954-

19 FCD-EFB, 2009 U.S. Dist. LEXIS 60849, at *10 (E.D. Cal. Jul. 15,

20

21 [8] The Bankruptcy Court may have been had in mind the Drum Line
   issue. But that itself requires testimony that may involve Salyer's
22 Fifth Amendment rights. While the court may share some of the same
   concern about that single incident, it is, at this stage, unclear
23 as to whether there was a violation of the temporary restraining
   order and, thus, relying on it seems misplaced in light of the
24 serious adverse consequences. Furthermore, the parties have
   represented that the only remaining assets are real property and
25 money. These assets, unlike the Drum Line, cannot be transferred
   without the approval of the Bankruptcy Court and, thereby, then
26 present little or no risk that they will be wrongfully transferred
   while the preliminary injunction is in effect.

21

1  2009) (Court does not mention intervention by government); <u>James</u>

2  <u>v. Conte</u>, No. C. 04-5312 SI, 2005 U.S. Dist. LEXIS 46962, *5

3  (N.D. Cal. Apr. 19, 2005) (same); <u>Javier H. v. Garcia-Botello</u>,

4  218 F.R.D. 72, 75-76 (W.D.N.Y 2003), (court simultaneously

5  granted a stay of proceedings and denied a motion to intervene

6  by the government). Indeed, it seems misplaced to suggest that

7  the prosecutor's view demonstrates the public interest in light

8  of the constitutionally protected right of presumed innocence

9  and the obligation of proof which falls only on the prosecution.

10  The Bankruptcy Court has not identified any other reasons why

11  the public interest in the integrity of this criminal case is

12  relatively low. This conclusion is also in clear error. There is

13  no factual basis to support the Bankruptcy Court's conclusion

14  that the public interest in the integrity of the criminal case

15  is "far outweighed in this case by the public's countervailing

16  interests in ensuring that aggrieved persons are made whole as

17  rapidly as possible . . . and by the public's interest in the

18  prompt resolution of civil cases." Memorandum Opinion at 10

19  (citations and internal quotations omitted).[9]

20  **3.   Reversal of Bankruptcy Court's Decision**

21  For the reasons discussed above, the court finds that the

22

23  [9] Appellants also argue that the Bankruptcy Court made an error of law in its application of the <u>Keating</u> factors.
24  Specifically, they argue that the court wrongly gave the interests of the creditors the weight of the interests of plaintiffs. Given
25  the court's conclusion that there were factual errors that demand reversal, the court need not address the merits of this argument.
26

1  Bankruptcy Court made several significant erroneous factual
2  findings in its application of the <u>Keating</u> factors. Based on
3  these clearly erroneous factual findings, the court determines
4  that the Bankruptcy Court abused its discretion in denying
5  Appellants' motion for a stay. The remaining question in this
6  appeal is, then, what order the court should issue. Remand with
7  instructions might well be appropriate because this court
8  reviews for abuse of discretion. However, the court finds that
9  it should craft an order staying proceedings in part because it
10 is responsible for the conduct of the criminal trial and is more
11 familiar with the values informing criminal proceedings.

12      Accordingly, the court orders a stay of all further
13 bankruptcy proceedings where Appellants make a credible showing
14 that discovery from or testimony of Scott Salyer or his criminal
15 counsel is relevant to the proceedings. The court wishes to be
16 clear, the orders heretofore issued on a preliminary basis are
17 unaffected by this order.

18                          **IV. CONCLUSION**

19      For the foregoing reasons the court REVERSES the decision
20 of the Bankruptcy Court denying Appellants motion to stay as
21 described above.

22      The court FURTHER ORDERS that the Trustee's motion to
23 dismiss is DENIED and the Trustee's motion to strike is GRANTED.

24      IT IS SO ORDERED.

25      DATED:   December 9, 2010.

26

                                              LAWRENCE K. KARLTON
                                   23         SENIOR JUDGE
                                              UNITED STATES DISTRICT COURT

B

1

2

3

4

5                        UNITED STATES DISTRICT COURT

6                      EASTERN DISTRICT OF CALIFORNIA

7

8  IN RE:

9  SK FOODS, L.P.

10           Debtor.

11 BRADLEY SHARP,                        CIV. NO. S-10-1492 LKK

12           Plaintiff,

13                v.

14 SSC FARMS 1, LLC, et al.,

15           Defendants.
   _____/
16 IN RE:

17 SK FOODS, L.P.                        CIV. NO. S-10-1493 LKK

18           Debtor.
                        _____/
19 IN RE:

20 SK FOODS, L.P.

21           Debtor.

22 BRADLEY SHARP,                        CIV. NO. S-10-1496 LKK

23           Plaintiff,

24                v.

25 CSSS, L.P., et al.,

26           Defendants.
   _____/

```
 1   IN RE:

 2   SK FOODS, L.P.

 3          Debtor.

 4   BRADLEY SHARP,                        CIV. NO. S-10-1497 LKK

 5          Plaintiff,

 6              v.

 7   FRED SALYER IRREVOCABLE
     TRUST, et al.,
 8
            Defendants.
 9   _____/

10   IN RE:

11   SK FOODS, L.P.

12          Debtor.

13   BRADLEY SHARP,                        CIV. NO. S-10-1498 LKK

14          Plaintiff,

15              v.

16   SKF AVIATION, LLC., et al.,

17          Defendants.
     _____/
18
     IN RE:
19
     SK FOODS, L.P.
20
            Debtor.
21
     BRADLEY SHARP,                        CIV. NO. S-10-1499 LKK
22
            Plaintiff,
23
                v.
24
     SCOTT SALYER, et al.,
25
            Defendants.
26   _____/
```

2

IN RE:

SK FOODS, L.P.

      Debtor.

BRADLEY SHARP,                                    CIV. NO. S-10-1500 LKK

      Plaintiff,

        v.                                  O R D E R

SCOTT SALYER, et al.,

      Defendants.

_____/

    Before the court is a motion for rehearing on this court's December 10, 2010 order reversing the denial of a stay of proceedings before the Bankruptcy Court, brought by the Bankruptcy Trustee ("Trustee"). The court resolves the ambiguity in its prior order below.

## I. BACKGROUND

    On December 10, 2010, the court reversed a decision of the bankruptcy court denying a motion to stay adversarial proceedings.[1] As to remedy, the court ordered "a stay of all further bankruptcy proceedings where Appellants make a credible showing that discovery from or testimony of Scott Salyer or his criminal counsel is relevant to the proceedings. The court wishes to be clear, the orders heretofore issued on a preliminary basis are unaffected by this order." Order at 23. The court did not indicate what issues, if any, were to be remanded to the Bankruptcy Court.

_____

    [1] The court incorporates its December 10, 2010 order.

1    Initially, the court set this motion to be heard on January
2   31, 2011. On January 25, 2011, however, the Trustee and Appellants
3   filed a stipulation to continue the hearing to a date no later than
4   March 31, 2011 so that the parties could engage in mediation. On
5   January 27, 2011, the court continued the hearing to April 11,
6   2011. On March 28, 2011, Appellants filed a supplemental objection
7   to the Trustee's motion. On April 4, 2011, the Trustee filed a
8   reply brief and the unsecured creditors joined the Trustee's
9   motion.[2] The motion was heard on April 11, 2011.

10                            **II. ANALYSIS**

11    The Trustee has moved for a rehearing on three issues, all
12   of which concern interpretation of the court's order on remedy.
13   Specifically, he requests clarification as to whether the
14   December 10, 2010 order constitutes an entry of a stay in the
15   bankruptcy proceedings. He further requests that this court
16   establish a procedure and time frame for the parties to submit
17   evidence in support of and in opposition to the specific stays.
18   Additionally, he argues that the court should amend the standard
19   set forth in the prior order to require a stay where testimony
20   of Scott Salyer ("Salyer") or his criminal counsel is necessary,
21   rather than relevant, to the proceedings.[3]

22

23    [2] The committee of unsecured creditors requests permission to
      file a brief as unofficial amicus curiae and for permission to
24   appear for oral argument. The court grants this request.

25    [3] The Trustee has also argued, in the alternative, that if the
      December 10, 2010 order was to operate as a stay, that it should
26   only apply to the adversary proceedings where Salyer is a party.

                                    4

1    The court acknowledges that its prior order was ambiguous
2  as to the remedy it issued. Accordingly, the court clarifies[4]
3  the remedy as follows: The court found that the due process
4  rights of Appellants may be infringed if they cannot adequately
5  defend themselves in the adversary proceedings without discovery
6  from or testimony of Salyer, who cannot be compelled to testify
7  under the Fifth Amendment, or his criminal counsel, who cannot
8  be compelled to violate the attorney-client privilege.
9  Nonetheless, the court recognizes that it is possible for the
10  adversary proceedings to continue without offending these
11  rights. Thus, the court is remanding the case to the Bankruptcy
12  Court to decide, in the first instance, whether discovery from
13  or testimony of Salyer or his criminal counsel is reasonably
14  necessary[5] to dispose of a particular matter before the
15  Bankruptcy Court in the adversary proceedings. A matter is
16  reasonably necessary if Appellants cannot adequately defend
17  themselves in an adversary proceeding without evidence from
18  Salyer or his criminal counsel. The Bankruptcy Court's decisions
19  on these matters may be directly appealed to this court on the

20

21  [4] Appellants challenge this court's jurisdiction to clarify
its prior order. Under Fed. R. Civ. P. 60(a), "the court may
22  correct . . . a mistake arising from oversight or omission whenever
one is found in a judgment, order, or other part of the record."
23  Under this rule, the court may amend its prior order to better
reflect its understanding of the issues and appropriate remedy.

24  [5] Upon further reflection, the court finds that the relevance
standard it previously ordered is too broad. Given the significant
25  overlap between testimony in the adversary proceedings and the
criminal proceedings, discovery from or testimony of Salyer or his
26  criminal counsel would almost necessarily be relevant.

1   same grounds that the court had jurisdiction to hear the appeal

2   of the first order denying a stay of proceedings.

3       Further, Appellants shall file their initial motions to

4   stay before the Bankruptcy Court within fourteen (14) days of

5   the issuance of this order.[6] These motions must be set for

6   hearing as early as practicable under the Bankruptcy Court's

7   local rules and procedures. The Bankruptcy Court shall issue

8   written orders explaining the basis for its decisions to stay or

9   not to stay the proceedings. Additionally, the court recognizes

10  that an adversary proceeding may not be subject to a stay at

11  this time, but may, through the course of litigation, require a

12  stay under the standard set forth above. In this situation,

13  Appellants shall file a motion to stay proceedings within

14  fourteen (14) days of their discovery of new evidence or

15  circumstances, which they contend reasonably requires evidence

16  from Salyer or his criminal counsel to adequately defend

17  themselves. This motion must also be set for hearing as early as

18  practicable. In addition to the burden set forth above,

19  Appellants must also demonstrate why the new facts or

20  circumstances that are claimed to exist were not shown at the

21  time of the initial motion and were only reasonably discovered

22  within fourteen (14) days of the filing of the motion.

23  Appellants may not sit on their rights. Failure to bring a

24

25      [6] The court assumes that Appellants intend to stay all
    adversary proceedings due to their representations at oral
26  argument. The court is in no way requiring the Appellants to seek
    such stays.

6

1   timely motion to stay will result in denial of the motion.

2      Moreover, in his reply, the Trustee attempts to introduce

3 new evidence in support of his argument that the court amend its

4 prior order. Specifically, the court concluded that the

5 Bankruptcy Court's finding that the preliminary injunction will

6 not protect the Trustee and creditors was in clear error because

7 the Bankruptcy Court presented no explanation as to why the

8 preliminary injunction was insufficient to protect those

9 interests. The Trustee now attempts to seek this court's

10 consideration of recent events to suggest that the preliminary

11 injunction may actually be insufficient. This evidence must

12 first be brought before the Bankruptcy Court in a motion to

13 amend or lift a stay. If the Trustee decides to bring such a

14 motion, the losing party may appeal the Bankruptcy Court's order

15 on the motion to this court, as is customary in this case. At

16 this time, however, it is not appropriate for the court to

17 consider this new evidence.[7]

18      IT IS SO ORDERED.

19      DATED: April 13, 2011.

20                               LAWRENCE K. KARLTON
                                     SENIOR JUDGE

21                                      UNITED STATES DISTRICT COURT

---

22     [7] The court notes that in its prior order affirming the
Bankruptcy Court's preliminary injunction, the court decided an

23 issue that was not previously raised before the Bankruptcy Court:
namely, whether counsel for the non-debtor entity-Appellants could

24 recover fees. The court only did so pursuant to stipulation of the
parties and in light of the unique relationship between the

25 Bankruptcy and District Courts. No such stipulation exists here
and, thus, the court declines to decide this question in the

26 instant motion.